IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WILLIAM B. DUREN                                                        PLAINTIFF

        v.                Civil No.  4:12-cv-04015 & 4:12-cv-04052

KIM WATSON, Disciplinary Committee
Judge; CAPTAIN STEVE HARTLINE;
WARDEN M. BRAZWELL; CORPORAL
HANNING; ALICE MILLER; ALVIN
HOWARD; OFFICER MOON, and
HAROLD RIGSBY                                                          DEFENDANTS

**MEMORANDUM OPINION**

        This is a civil rights case brought by the Plaintiff under the provisions of 42 U.S.C. § 1983.

He proceeds *pro se* and *in forma paupers.*  The case is before me pursuant to the consent (ECF No.

16) of the parties.

        Plaintiff is currently incarcerated in a Texas Department of Criminal Justice facility in

Tennessee Colony, Texas.   At all times relevant to this case, Plaintiff was incarcerated in the Miller

County Detention Center (MCDC) located in Texarkana, Arkansas.

        While incarcerated at the MCDC, Plaintiff maintains his constitutional rights were violated

in the following ways:  (1) he was denied due process in connection with a disciplinary charge he

was given following an incident on January 9, 2012; (2) excessive force was used against him on

February 1, 2012; and (3) excessive force was used against him on February 6, 2012.

        Currently before me for decision is the partial summary judgment motion (ECF Nos. 25-27)

filed by the Defendants.[1]  Plaintiff has responded (ECF No. 32) to the motion.

---

[1]The motion does not address the claim that Captain Hartline denied Plaintiff a due process hearing in retaliation for Plaintiff filing a grievance against Hartline.

## 1.  Background

On December 7, 2011, Plaintiff was booked into the MCDC.  *Defendants' Exhibit* A (hereinafter *Defts' Ex.*).  Marty Brazell is the jail warden.  *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) C at pg. 1.

On January 7, 2012, a contraband shakedown was done.  *Defts' Ex.* D.  Plaintiff had four "kites" or notes.  *Id.*  Plaintiff was charged with a D-9 disciplinary violation.  *Id.*  A D-9 violation is possession of any items not authorized for retention.  *Defts' Ex.* K at pg. 4.

According to the disciplinary policy, ordinarily, a charged inmate would appear before the disciplinary committee[2] within three working days after receipt of the written disciplinary report, excluding weekends, holidays, and Court days.  *Defts' Ex.* K at pg. 6.  Exceptions to the three day rule include the inmate being on suicide watch; the inmate being disruptive or presenting a safety threat to staff or others; the inmate being absent from the facility; or when the possibility of criminal charges against the inmate are being considered.  *Id.* at pgs. 6-7.  *See also Resp.* at ¶ 48.

On January 9th, a disciplinary hearing was held.  *Defts' Ex.* B.  Plaintiff was put on disciplinary segregation and lost his commissary and visitation privileges for seven days.  *Id.*  He was given three days credit for time he already served.  *Id.*  He was to be released from disciplinary segregation on January 13th.  *Id.*; *Resp.* at ¶ 6; *Plff's Ex.* B.

On January 10th, Plaintiff was involved in a fight with inmate Ellingburg.  *Defts'* C; *Resp.* at ¶ 5.  At the time, Plaintiff was still on lock-down from the January 7th disciplinary violation  and he remained on lock-down.  *Defts' Ex.* C; *Plff's Resp.* at ¶ 6.  He was served with a warrant on the criminal charge on January 20th.  *Amended Complaint* (ECF No. 22)

Plaintiff was criminally charged with aggravated assault.  *Defts' Ex.* C.  In accordance with

---

[2]A committee is no longer utilized.  *Plff's Ex.* 2 at pg. 2.  Instead, since February 1, 2011, there is a disciplinary hearing officer, Kim Watson, who hears the cases on Monday of each week.  *Plff's Ex.* D at pg. 3; *Plff's Ex.* J at pg. 1.  In Watson's absence, Captain Hartline is certified as a disciplinary officer.  *Plff's Ex.* J at pg. 2.  The copy of the disciplinary policy provided to the Court has not been updated.

the disciplinary policy, "[t]he disciplinary procedure [was] suspended pending criminal prosecution or declination by the [Criminal Investigation Division]." *Defts' Ex.* K.  The criminal charge was resolved on January 23rd when Plaintiff pled guilty. *Resp.* at ¶ 49.  According to Watson and Hartline, Plaintiff was being held in administrative segregation and not disciplinary segregation during the time the disciplinary charge was in suspension. *Plff's Ex.* D at pg. 2; *Plff's Ex.* J at pg. 2.

On February 6th, a disciplinary hearing was held on the January 9th disciplinary violation. *Defts' Ex.* C*.; Resp.* at ¶ 47.  Watson maintains that the hearing was held on the earliest possible date. *Pff's Ex.* D at pg. 1.  Plaintiff was charged with violation of A-3 which is aggravated assault. *Defts' Ex.* K at pg. 2.  Plaintiff was found guilty and assigned to disciplinary segregation and loss of commissary and visitation for sixty days. *Defts' Ex.* C.  He was given fourteen[3] days for time already served. *Id.*  He was to be released on March 23rd. *Id.*  Plaintiff maintains the hearing was a sham and did not satisfy due process. *Resp.* at ¶ 47.

On February 1st, officers engaged in hand to hand combat with the Plaintiff. *Defts' Ex.* D  Officer Mitchell Moon was involved in the incident. *Id.* at ¶ 3.  Moon indicates that Plaintiff was in the day room and refusing to go back to his cell. *Defts' Ex.* E.  According to Plaintiff, he had asked Officer Murray to speak with a supervisor and was told by "to hang on" while Murray checked with the supervisor. *Resp.* at ¶ 9.  Plaintiff indicates he sat down at the table while waiting. *Id.*

Sergeant Alice Miller arrived with several other officers. *Defts' Ex.* E.  Moon, Officer Alvin Howard, and Officer Harold Rigsby, entered the pod. *Id.* at ¶  Plaintiff was sitting at a table. *Id.*  He was "given several verbal commands to return to his cell and refused." *Id.* at ¶ 8.  Moon and

---

[3]It is not clear how the fourteen days was calculated.  There are twenty-four calendar days between January 13th, when he would have been off disciplinary segregation, and February 6th ,when the hearing was held.  It appears that he may have been given credit for the days between his conviction on the criminal charge and the date the hearing was held.

Howard each grabbed Plaintiff by an arm in order to physically put him back into his cell.  *Id.* at ¶ 9.  Howard states that the Plaintiff was in a combative state.  *Plff's Ex.* H at pg. 3.  Defendants assert that Plaintiff began resisting and kicked Rigsby.  *Defts' Ex.* E at ¶ 10.  Plaintiff, however, states he was attempting to defend himself from an assault.  *Resp.* at ¶ 15.  He states that he did accidentally kick Rigsby.  *Id.*

Plaintiff indicates that Howard pulled him off the table by his left arm and then put Plaintiff in a choke hold.  *Resp.* at ¶ 14.  Moon grabbed Plaintiff's legs.  *Defts' Ex.* E. at ¶ 11.  Plaintiff asserts that Howard slammed him to the ground face first and landed on his back.  *Resp.* at ¶ 16.  According to Moon, Howard never choked the Plaintiff.  *Defts' Ex.* E. at ¶ 13.  Howard indicates that he and the other officers had to pick Plaintiff up by his arms and legs to carry him to his cell because he would not obey the orders to return to his cell.  *Plff's Ex.* H at pg. 1.

Miller was present and directed Plaintiff to return to his cell.  *Plff's Ex.* H at pg. 6.  Miller did not use any physical force.  *Id.*; *see also Plff's Ex.* O at pgs. 2-3.  She did not attempt to stop the use of physical force by the officers.  *Plff's Ex.* O at pg. 4.

After Plaintiff was subdued, he was taken to the nurse to determine if he had any injuries.  *Defts' Ex.* E at ¶ 12; *Defts' Ex.* F.  The nurse's notes indicate Plaintiff denied having any injuries.  *Defts' Ex.* F.  Plaintiff, however, states he reported pain in his neck and back and a cut in his mouth.  *Resp.* at ¶ 15.  No disciplinary violation was issued.  *Plff's Ex.* F at pg. 5.  Both Brazell and Captain Hartline review cases where officers use force on inmates.  *Plff's Ex.* C at pg. 4.

The next incident began  on February 6th around 10:00 a.m.  *Defts' Ex.* I.  Corporal Hanning accompanied by D. Floyd, Murray, and Rigsby entered the cell block.  *Defts' Ex.* H. Plaintiff refused to return to his cell.  *Id.*  According to Defendants, Plaintiff responded: "Well I guess [you are] gonna have to gas me."  *Id.*  Plaintiff denies having made this statement.  *Resp.* at ¶ 26.  He indicates he

merely said that he needed to speak to the warden.  *Id.*

After three direct orders to return to his cell were ignored by Plaintiff, Hanning administered a short one second burst of OC pepper spray to Plaintiff's facial area  *Defts' Exs.* H & I.  Plaintiff states he was not given any direct orders.  *Resp.* at ¶ 27.  Furthermore, he indicates the first use of the spray hit him in the back of his head.  *Id.* at ¶ 28.

Plaintiff retreated to the back of the cell.  *Defts' Ex.* I.  Hanning told Plaintiff to go to the ground.  *Id.*  Plaintiff asserts that he never heard an order to go to the ground.  *Id.* at ¶ 30.

When Plaintiff did not obey, Hanning administered another short burst of OC pepper spray. *Defts' Ex.* I.  Plaintiff was directed again to go to the ground.  *Id.*  He did not comply and Hanning administered a third short burst of spray.  *Id.*   According to Hanning, only approximately thirty seconds passed between the first and third applications of the spray.  *Plff's Ex.* G at pg. 3.

Plaintiff ran toward the shower and attempted to wash his face off.  *Defts' Ex.* I.  Plaintiff physically resisted but the officers were able to gain control of Plaintiff.  *Deft' Ex.* I; *Resp.* at ¶ 32.  Plaintiff was placed in hand restraints until the restraint chair was brought into the pod.  *Defts' Ex.* I; *Resp.* at ¶ 32.  He was placed in the restraint chair at approximately 10:45.  *Resp.* at ¶ 34.  Plaintiff was checked for injuries by the nurse and was allowed to decontaminate himself in the shower at about 10:50 a.m.  *Defts' Ex.* I; *Resp.* at ¶ 34. Plaintiff notes that he was not handcuffed or otherwise restrained while he showered.  *Resp.* at ¶ 34.

After he changed into a clean uniform, Plaintiff was placed back into the restraint chair at approximately 11:10 a.m.  *Defts' Ex.* I. According to Hanning, Brazell made the decision that Plaintiff should be put back in the restraint chair.  *Plff's Ex.* G at pg. 4.  Plaintiff  was removed from the restraint chair at 1:45 p.m..  *Id.*; *Resp.* at ¶ 36.

Defendants submitted a video showing Plaintiff being placed in the restraint chair. *Defts' Ex.*

J.  Plaintiff was put in the restraint chair and it was wheeled out of view of the camera for a short time period. *Defts' Ex.* J; *Resp.* at ¶ 43.  A few minutes later he was removed from the restraint chair, presumably to shower.  *Id.*  He was put back in the restraint chair approximately twenty-five minutes later.  *Id.*  He remained in the restraint chair for approximately two and a half hours.  *Id.*  Plaintiff was not harmed when put in the restraint chair and wasn't left in a dangerous situation. *Id.* at ¶¶ 44-45.

Plaintiff was charged with a C-5[4] disciplinary violation for refusing to obey the orders of a staff member. *Defts' Ex.* H.   Plaintiff was released from the MCDC on February 15th.  *Plff's Ex.* C at pg. 1.

## 2.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).  "A case founded on

---

[4]The disciplinary policy submitted as an exhibit, Defendants' Exhibit K, does not contain a C-5 violation.

speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

(A).  ***Due Process***

When "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, due process requires some kind of hearing beforehand." *Jones v. Mabrey*, 723 F.2d 590, 594 (8th Cir. 1983).  "The Supreme Court has outlined the procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008)(*citing Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)).  These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id; see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Once Plaintiff's guilt on the criminal charge was established, Defendants maintain Plaintiff was not even entitled to a disciplinary hearing. Defendants also argue they correctly followed the disciplinary policy and suspended determination of the disciplinary violation until after the criminal

charge had been concluded.  Finally, Defendants maintain that the short duration, less than a month, is insufficient to state a due process claim.

 Plaintiff points out that he remained on disciplinary segregation after January 13th when he was due to be released from segregation.  Additionally, he points out that the criminal case was resolved on January 23rd but he did not receive a hearing that day or on January 30th although other disciplinary hearings were held.  Finally, he maintains the policy itself is unconstitutional.

In *Brown-El v. Delo*, 969 F.2d 644 (8th Cir. 1992), the Court noted that it did:

> not quarrel with the prison's need to segregate individual inmates from the general prison population for non-punitive reasons; for example, where the inmate is being held pending an investigation of misconduct charges or where there is a threat to the safety and security of the institution.  Absent a showing of an expressed intent to punish by the prison officials, whether an inmate is segregated for "punitive" reasons or for administrative purposes generally will turn on whether the detention is reasonably related to a legitimate government objective.  If the decision to segregate is arbitrary or purposeless, a court may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon inmates.

*Id.* at 647-48 (internal quotation marks and citations omitted).

In this case, Plaintiff was held in disciplinary segregation from January 13th to February 6th when a hearing was held.  As noted above, Watson asserts that Plaintiff was being held in administrative segregation pending the disciplinary hearing.  Nothing in the summary judgment record indicates that Plaintiff's status or conditions of confinement changed.  Hartline indicates the Plaintiff was housed in Max Alfa from January 9th to February 6th because of his physical altercation with another inmate.  *Plff's Ex.* N at pg. 1.  Plaintiff was kept on 23-hour lock-down. *Plff's Ex.* P at pg. 7.

Defendants indicate that the disciplinary policy was suspended while the criminal charge was pending but do not explain their reasons for continuing to hold Plaintiff in disciplinary segregation during the suspension period or after the criminal case was resolved.  A question of fact exists as to

-8-

whether Plaintiff was being punished for a disciplinary violation without the hearing requirements set forth in *Wolff* being complied with.

Defendants have relied on *Sandin v. Conner*, 515 U.S. 472, 486 (1995). They assert that Plaintiff must show some type of atypical and significant deprivation before his liberty interest is implicated. *Sandin* applies to convicted inmates not to pretrial detainees. *See e.g., Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012). Nothing in the summary judgment record indicates Plaintiff was in convicted status prior to January 23rd.

I reject Plaintiff's argument that the disciplinary policy is itself unconstitutional. It is not the policy that Plaintiff disagrees with. Instead, it is the way the policy was applied in his case.

(B). ***Excessive Force--February 1, 2012***

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013)(*quoting Hudson v. McMilliam*, 503 U.S. 1, 6-7 (1992)). "[E]very malicious push or shove does not amount to a deprivation of constitutional rights." *Hickey v. Reeder,* 12 F.3d 754, 757 (8th Cir. 1993).

The Court must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

In *Wilkins v. Gaddy*, 590 U.S. 34 (2010), the Supreme Court held that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of

force applied is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).

In this claim, Moon, Howard, and Rigsby are entitled to summary judgment in their favor. Even assuming Plaintiff did not hear the verbal orders given him, he concedes he began to defend himself by struggling and kicking when the officers took hold of his arms. These actions justified the use of some amount of additional force to gain control of the Plaintiff.

The type or amount of force used during this incident is not repugnant to the conscience of mankind. *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000). Indeed, the Eighth Circuit has recognized that "summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy." *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 2000). Defendants are entitled to summary judgment on this claim.

(C). *Excessive Use of Force–February 6, 2012*

On February 6th, OC pepper spray or another similar chemical agent, was used by Hanning three times in a short period of time. Plaintiff was then placed in the restraint chair before decontamination and was returned to the restraint chair following his decontamination.

Courts, including the Eighth Circuit, have concluded that "a limited application of [non-lethal chemical agent] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(discussing cases from a number of jurisdictions holding the use of chemical agents did not constitute cruel and unusual punishment if reasonably necessary to maintain security and order or subdue a recalcitrant prisoner). The Eighth Circuit also noted that when "[u]sed in such manner and purpose, its application should 'rarely be a proper basis for judicial oversight.'" *Jones*, 207 F.3d at

-10-

496.

In *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006), the court considered factors including whether the actions of the officers were defensive in nature or motivated by anger; whether the actions were necessary to maintain order or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation. *Id.* The court noted additional material issues included whether or not the inmate failed to comply with orders given by officers in the cell, whether the inmate was actively resisting them, whether verbal orders or the application of less force would have been sufficient, whether or not a warning issued before the application of the pepper spray, and whether the inmate suffered real injuries. *Id.*

Plaintiff maintains: he was not given any verbal warnings; he did not refuse to go to his cell at any time; he asked to speak to the warden; he did not make a statement that he guessed Hanning would have to "gas" him; while still sitting he turned his back to Hanning; and he "retreated" in an effort to get away from the officers. *Id.* at ¶¶ 25-31. Clearly, there are genuine issues of material fact in this case. Hanning's and Plaintiff's versions of the event differ dramatically. At the summary judgment stage, I am not free to adopt one parties' version of the events over another.

"[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982). "The interest survives a criminal conviction and incarceration, pretrial detention, or involuntary civil commitment. Of course, a detainee's liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001)(citations omitted).

In this case, there are clearly genuine issues of material fact based on the record before us.

-11-

Defendants have introduced nothing that establishes why it was believed that this additional restraint was necessary and who decided the length of time Plaintiff would remain in the restraint chair. According to Hartline, an inmate remains in the restraint chair until it is determined the inmate is no longer physically aggressive. *Plff's Ex.* J. at pg. 4. Nothing in the record indicates who made the decision Plaintiff was no longer physically aggressive.

This is particularly true when Plaintiff was returned to the restraint chair after having showered. Plaintiff was put back into the restraint chair despite the fact that he was unrestrained when walking back to pod control where the restraint chair was and was offering no resistance. There are genuine issues of material fact as to whether Plaintiff was a threat to safety or security at this point. Defendants are not entitled to summary judgment on this claim.

(D). ***Official Capacity Claims***

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

To establish Miller County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity

-12-

before municipal liability can attach. <u>Speer v. City of Wynne</u>, 276 F.3d 980 (8th Cir.2002); <u>Parrish v. Luckie</u>, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. <u>Szabla v. City of Brooklyn Park</u>, 486 F.3d 385, 389-90 (8th Cir.2007).

<u>Id</u>. at 817-18.

Plaintiff maintains that the disciplinary policy is unconstitutional. However, as noted above, the policy, as written, directs compliance with the standards set forth by the Supreme Court in *Wolff*. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" *Mann v. Yarnell*, 497 F.3d 822, 827-828 (8th Cir. 2007)(*quoting City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Defendants are entitled to summary judgment on the official capacity claims because there is no genuine issue of material fact as to whether a custom or policy of the MCDC was the moving force behind the constitutional violations alleged to exist in this case.

**4.  Conclusion**

For the reasons stated, the summary judgment motion (ECF No. 25) is granted in part and denied in part. In particular, the motion is granted as to the February 1st incident and all official capacity claims. The motion is denied as to the due process issue and the issue of whether excessive force was used on February 6th. All claims against Miller, Moon, and Howard are dismissed.

**DATED** this **28th day of March 2014.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

-13-